## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | | |
|---|---|---|
| NFM, Inc. | : | Case No. |
| 1190 Winterson Road, Suite 300 | : | |
| Linthicum, MD 21090 | : | |
| | : | Judge_____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **VERIFIED COMPLAINT FOR** |
| Justin Bolden | : | **TEMPORARY RESTRAINING** |
| 1043 Liberty Meadows Road | : | **ORDER, PRELIMINARY AND** |
| Dayton, OH 45417 | : | **PERMANENT INJUNCTIVE** |
| | : | **RELIEF, AND DAMAGES** |
| And | : | |
| | : | |
| Stephen Levitt | : | |
| 1125 North Bird Road | | |
| Springfield, OH 45503 | | |
| | | |
| Defendants. | | |

Plaintiff NFM, Inc. ("NFM"), for its Verified Complaint against Defendants Justin

Bolden ("Bolden") and Stephen Levitt ("Levitt"), alleges as follows:

### NATURE OF THE ACTION

1.       This action for damages and injunctive relief arises from the breach of contractual

and statutory duties not to compete and/or disclose confidential information owed to NFM by

two of its former employees, Bolden and Levitt.

2.       NFM is a national residential mortgage lender that utilizes local loan originators

to provide premier customer service to home loan borrowers. NFM has assisted borrowers in the

path to home ownership for more than twenty-five years. NFM has offices throughout the United

States, including a location in Kettering, Ohio.

3.       The residential mortgage industry is a highly competitive industry.

4.      On or about March 7, 2022 Bolden executed a Code of Conduct Agreement ("Bolden's 2022 Conduct Agreement") in Ohio in consideration for continued employment with NFM in which he agreed, among other things, not to compete with NFM for a period of one-year after the termination of his employment and not to solicit customers, employees, or anyone else that has a business relationship with NFM. Bolden further agreed not to disclose NFM's confidential, proprietary, and/or trade secret information for the duration of his employment and thereafter. A true and accurate copy of Bolden's 2022 Conduct Agreement is attached hereto as **Exhibit A**.

5.      In consideration for continued employment at NFM, Bolden agreed to similar provisions as those set forth in the directly preceding paragraph by executing a Salesperson Employment Agreement ("Bolden's 2022 Salesperson Agreement") in Ohio on or about March 7, 2022. A true and accurate copy of Bolden's 2022 Salesperson Agreement is attached hereto as **Exhibit B**.

6.      Despite his 2022 Conduct Agreement and 2022 Salesperson Agreement, Bolden began working for UMortgage ("UMortgage") a direct competitor of NFM, immediately after voluntarily terminating his employment with NFM.

7.      UMortgage, like NFM, is engaged in the residential mortgage business throughout the United States, including Ohio.

8.      Upon information and belief, Bolden is serving in a substantially similar role at UMortgage as he did at NFM and is utilizing NFM's confidential, proprietary, and trade secret information to directly compete with NFM, to solicit NFM's customers, and to otherwise further UMortgage's business.

9.      On or about February 24, 2022 Levitt executed a Code of Conduct ("Levitt's 2022

2

Conduct Agreement") in Ohio in consideration for continued employment with NFM in which he agreed, among other things, not to compete with NFM for a period of one-year after the termination of his employment and not to solicit customers, employees, or anyone else that has a business relationship with NFM. Levitt further agreed not to disclose NFM's confidential, proprietary, and/or trade secret information for the duration of his employment and thereafter. A true and accurate copy of Levitt's 2022 Conduct Agreement is attached hereto as **Exhibit C**.

10. In consideration for continued employment at NFM, Levitt agreed to similar provisions as those set forth in the directly preceding paragraph in a Salesperson Employment Agreement ("Levitt's 2022 Salesperson Agreement") he executed in Ohio on or about February 24, 2022. A true and accurate copy of Levitt's 2022 Salesperson Agreement is attached hereto as **Exhibit D**.

11. Despite those agreements, Levitt began working for UMortgage both during and immediately after vacating his employment with NFM.

12. Upon information and belief, Levitt is serving in a substantially similar role at UMortgage as he did at NFM and is utilizing NFM's confidential, proprietary, and trade secret information to directly compete with NFM, to solicit NFM's customers, and to otherwise further UMortgage's business.

13. Accordingly, this Court's intervention is necessary in order to avoid the future harm that NFM will suffer if Bolden's and Levitt's conduct is allowed to continue, and to remedy any harm that their conduct has already inflicted.

## PARTIES, JURISDICTION, AND VENUE

14. NFM is a Maryland corporation with its principal place of business at 1190 Winterson Road, Suite 300 in Linthicum, Maryland.

3

76723015v3

15.     Bolden is a former loan originator at NFM's Kettering, Ohio location and, upon information and belief, currently resides at 1043 Liberty Meadows Road in Dayton, Ohio.

16.     Levitt is a former loan originator at NFM's Kettering, Ohio location and, upon information and belief, currently resides at 1125 North Bird Road in Springfield, Ohio.

17.     This Court has subject matter jurisdiction to hear this action, in accordance with 28 U.S.C. § 1331, because NFM's claims arise under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836. The Court has supplemental jurisdiction over NFM's state law claims pursuant to 28 U.S.C. § 1367.

18.     Bolden consented to the exclusive personal jurisdiction of this Court in his 2022 Conduct Agreement. Further, NFM suffered the injury and harm from Bolden's conduct in Maryland.

19.     Levitt consented to the exclusive personal jurisdiction of this Court in his 2022 Conduct Agreement. Further, NFM suffered the injury and harm from Levitt's conduct in Maryland.

20.     Bolden and Levitt consented to venue in this Court pursuant to their respective 2022 Conduct Agreements. Venue is therefore proper in this Court pursuant to those agreements.

21.     Venue is also proper in this Court under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

I.     **Bolden**

    A.     **2021 Agreements**

22.     NFM offered Bolden the job of loan originator at its Kettering, Ohio office in July 2021. Bolden was hired to support NFM's existing business relationships and consumers in the Kettering, Ohio and establish new relationships on behalf of NFM in order to originate residential mortgage loans.

4

23.     Bolden's Offer Letter, a true and accurate copy of which is attached as **Exhibit E**, contained the following conditions:  (1) Bolden could only work for NFM during his employment with the company due to licensing regulations; (2) Bolden could not assist any person or organization in competing or preparing to compete with NFM; (3) Bolden could not hire any NFM employee to compete with NFM; and (4) Bolden must agree to the terms set forth in the 2021 Salesperson Employment Agreement.

24.     Bolden accepted NFM's Offer Letter in July 2021 by signing it in Ohio. (Ex. E.) At the time he started with NFM, he had no mortgage loan industry experience.

25.     In consideration of Bolden's employment with NFM, Bolden executed the 2021 Salesperson Employment Agreement in August 2021 in Ohio. A true and accurate copy of Bolden's 2021 Salesperson Employment Agreement is attached hereto as **Exhibit F**.

26.     Bolden's 2021 Salesperson Employment Agreement prohibited Bolden from using NFM's confidential and trade secret information to solicit customers, employees, or anyone else that has or had a business relationship with NFM for one year following his termination from employment. (Ex. F.)

27.     Bolden's 2021 Salesperson Employment Agreement prohibited him from disclosing NFM's confidential, proprietary, and/or trade secret information. (Ex. F.)

28.     In consideration of Bolden's employment with NFM, Bolden also executed a 2021 Code of Conduct ("Bolden's 2021 Conduct Agreement") in Ohio. A true and accurate copy of Bolden's 2021 Conduct Agreement is attached as **Exhibit G**.

29.     Bolden's 2021 Conduct Agreement contained a non-compete provision wherein Bolden agreed not to "directly or indirectly, either on [his] own behalf or on behalf of any other person, firm, corporation, company, or other entity service or attempt to service any consumer

5

who were not self-generated by the employee or perform work for any recent, current, or prospective consumer that was generated or referred by NFM Lending," for a period of one-year after termination of his employment. (Exhibit G at p. 9.)

30.     Via Bolden's 2021 Conduct Agreement, Bolden further relevantly agreed not to:

    1.     Attempt or act in any manner to persuade any consumer or potential consumer that was generated or referred by NFM Lending to cease to do business or to reduce the amount of business which such customer or client has customarily done or contemplates doing with NFM Lending.

    2.     Employ or attempt to employ any person who is then in the employ of or in a contracting relationship with NFM Lending or who was in the employ of or in a contracting relationship with NFM Lending within one-year prior to the termination of the employee's employment relationship with NFM Lending.

. . .

    4.     Solicit or divert (or attempt to solicit or divert) business of any consumer or potential consumer generated or referred by NFM Lending of the type usually provided by NFM Lending for any such consumer or potential consumer.

(Ex. G at p. 10.)

31.     Bolden executed the "NFM Lending Employee Handbook and Resources Guide" ("Bolden's 2021 Employee Handbook") in Ohio in August 2021 in consideration of his employment with NFM. A true and accurate copy of Bolden's 2021 Employee Handbook is attached as **Exhibit H**.

32.     Bolden's 2021 Employee Handbook specified that Bolden must "follow all applicable statutes, ordinances, rules, and regulations." (Ex. H at p. 13; *see also id*. at p. 16.)

33.     Bolden's 2021 Employee Handbook prohibited Bolden from engaging in conduct that constituted an actual or potential conflict of interest with NFM's interests. (Ex. H at p. 14.) Bolden's 2021 Employee Handbook indicated that "using proprietary or confidential Company

6

information for personal gain to the Company's detriment" and "using Company assets . . . for personal labor or gain," were prohibited conflicts of interest. (Ex. H. at p. 15.)

34.     Bolden's 2021 Employee Handbook specified that:

> All NFM Lending records, policies, procedures, and information relating to NFM Lending or its consumers, suppliers, and vendors are to be kept confidential, and divulged only to individuals within the Company with both a need to receive and an authorization to receive the information.
>
> ***All records, policies, procedures, and files maintained by the Company are confidential and remain the property of the Company.***
>
> Employees are prohibited from disclosing nonpublic personal information ("NPI") about NFM Lending's customers or consumers as those terms are defined in Title V of the Gramm-Leach-Bliley Act ("GLBA") to which the employee may have access to.
>
> Further, due to the privacy obligations under GLBA, all NPI, records, history, and discussions about the people we serve must be considered private and kept in confidence. The very fact that an individual is served by NFM Lending can be disclosed only under specified conditions, which are described below, for reasons relating to law enforcement and fulfillment of our mission. Employees may not disclose any information about a customer or consumer, including the fact that the customer or consumer is or is not served by our Company to anyone outside this Company unless so permitted by General Counsel or other authorized personnel.
>
> NFM Lending is dedicated to ensuring that all consumer data is secure and safe. Employees must keep and handle personal consumer records and information in a manner that reasonably safeguards from destruction, theft, or other lose or harm from the consumer.

(Ex. H at p. 18) (emphasis in original).

35.     Bolden's 2021 Employee Handbook required Bolden to return "all Company property, including but not limited to keys, computer equipment and all electronic and paper documents, handbooks, manuals, issued to the employee during employment" to NFM upon cessation of employment. (Ex. H. at p. 42.)

7

36.     Through his signature on the 2021 Employee Handbook, Bolden acknowledged that he "underst[ood] and agree[d] that [he] will read and comply with the policies contained in this Manual and any revisions, and [that he was] bound by the provisions contained therein, and that [his] continued employment is contingent on following those policies." (Ex. H at p. 74.)

**B.      2022 Agreements**

37.     Bolden's 2022 Salesperson Agreement contained the following confidentiality and non-solicitation covenants:

> Employee acknowledges that the services rendered by them on behalf of NFM are of a special and unique character and that during employment Confidential Information will be accessed by the Employee related to Consumers/Clients and NFM employees.
>
> Due to the federal and state regulatory requirements related to the protection of privacy for Consumers/Clients of NFM, during the term of this Agreement, and for one (1) year following its termination, Employee agrees he/she shall not directly or indirectly either on their behalf or on behalf of another person, solicit or attempt to solicit to any Consumer/Client within NFM's loan origination software, consumer relations management software or any other NFM database that contains Confidential Information that the Employee or their staff would have had access to during the term of this Agreement. . . .
>
> Employee further acknowledges that a violation of this section shall result in irreparable harm to NFM and shall warrant the filing of all relief available under a court of law whether injunctive or monetary in nature.

(Ex. B at p. 2-3.)

38.     Bolden's 2022 Salesperson Agreement contained the following confidentiality provision:

> Employee agrees:
>
> To hold the Confidential Information of NFM in strict confidence and to take reasonable precautions to protect such Confidential Information

> To comply with all federal and state laws regarding privacy and confidentiality of consumer or consumer information including, but not limited to, the Gramm-Leach-Bliley Act and its implementing regulations.
>
> To not copy such Confidential Information, or reverse engineer or disassemble any products, technology or tangible objects that utilize such Confidential Information. Employee shall promptly notify NFM upon discovery of any unauthorized use or disclosure of Confidential Information, or any other breach of this Agreement, and will cooperate with NFM in every reasonable way to help regain possession of such Confidential Information and prevent its future unauthorized use.

(Ex. B at p. 3.)

39.    Bolden's 2022 Salesperson Agreement required Bolden to return all "manifestations of [NFM's] Confidential Information, and all documentation or media containing such Confidential Information, and all copies or extracts thereof" to NFM upon termination. (Ex. B. at p. 4.)

40.    Bolden agreed to comply with all applicable rules, policies, and procedures of NFM and to follow all relevant laws via his 2022 Salesperson Agreement. (Ex. B. at p. 8.)

41.    Bolden's signature on his 2022 Salesperson Agreement served as an acknowledgement that "the provisions of this policy regarding the Covenant Not to Compete and on Confidentiality shall survive the expiration or termination of [his] employment with NFM Lending." (Ex. B at p. 12.)

42.    In consideration of Bolden's continued employment with NFM, Bolden signed his 2022 Conduct Agreement. Bolden's 2022 Conduct Agreement was substantially similar to his 2021 Conduct Agreement.

43.    Pursuant to the express terms of Bolden's 2022 Conduct Agreement, Bolden agreed to "keep and handle personal consumer records and information in a manner that reasonably safeguards from destruction, theft, or other lose or harm from the consumer" and to

9

never "[p]rovide consumer data to a third party without consumer's express written authorization to release data." (Ex. A at p. 4.)

44.     Pursuant to the express terms of Bolden's 2022 Conduct Agreement, Bolden agreed, among other things, to the following non-competition and non-solicitation covenants:

> Due to the special relationships that exist between its employees, and NFM Lending's customers and clients, employees, in the course of their executing duties, will acquire valuable confidential information, trade secrets, customer lists, proprietary information, financial information, and unique skills. Per company policy, employees will agree in consideration of their employment and the compensation, that while they are employed by NFM Lending and for a period of _one-year_ after the termination of their employment relationship with NFM Lending, they shall not without the prior written consent of NFM Lending, directly or indirectly, either on their own behalf or on behalf of any other person, firm, corporation, company, or other entity service or attempt to service any consumer who were not self-generated by the employee or perform work for any recent, current, or prospective consumer that was generated or referred by NFM Lending.

> Employees agree while they are employed by NFM Lending and for a period of _one-year_, not to:

> 1.     Attempt or act in any manner to persuade any consumer or potential consumer that was generated or referred by NFM Lending to cease to do business or to reduce the amount of business which such customer or client has customarily done or contemplates doing with NFM Lending.

> 2.     Employ or attempt to employ any person who is then in the employ of or in a contracting relationship with NFM Lending or who was in the employ of or in a contracting relationship with NFM Lending within one-year prior to the termination of the employee's employment relationship with NFM Lending.

> . . .

> 4.     Solicit or divert (or attempt to solicit or divert) business of any consumer or potential consumer generated or referred by NFM Lending of the type usually provided by NFM Lending for any such consumer or potential consumer.

(Ex. A at p. 9.) (emphasis in original)

10

45.     Pursuant to the express terms of Bolden's 2022 Conduct Agreement, Bolden

agreed, among other things, to the following confidentiality provisions:

> NFM Lending current and past employees are prohibited from
> disclosing to anyone outside of NFM Lending, using in anything
> other than NFM Lending business, or permitting any person
> (including past employees) to examine or make copies of any
> document that contains or are derived from any confidential
> information (including policies and procedures).
>
> Employees are required to hold the Confidential Information of
> NFM in strict confidence and to take reasonable precautions to
> protect such Confidential Information. . . . Confidential Information
> is any information, policy, procedure, memo, handbook, or
> materials concerning NFM Lending affairs whether business,
> technical or otherwise, which are not known to the public at large.
> It includes, but is not limited to, information and materials
> developed, collected, or used by NFM Lending personnel,
> information disclosed to NFM Lending by its clients or potential
> clients in the course of business; and information disclosed by third
> parties with which NFM Lending has or may have future concern
> in, but is not limited to, business strategies, financial data business
> plans, technology, contract provisions, client list, or personnel data.
> It may be contained on paper records, computer printouts, disks or
> other forms of documentation or media. However, it need not
> necessarily be reduced to a tangible form.

(Ex. A at 10.)

46.     Boden's 2022 Conduct Agreement enables the Court to revise any portions of the

2022 Conduct Agreement's restrictive covenant if:

> any of the terms contained in the restrictive covenant or in its anti-
> piracy and confidentiality provisions shall be deemed to be
> unenforceable by reason of their breadth, duration, scope, or any
> other reason, then the parties hereto agree that a court of competent
> jurisdiction may reduce such breadth, duration, or geographical
> scope or appropriately modify the provisions hereof and enforce
> said covenant in its reduced form for all purposes in the manner
> contemplated in this policy.

(Ex. A at 10.)

47.     Pursuant to his 2022 Conduct Agreement, Bolden agreed that "[u]pon termination

or resignation of employment with NFM Lending for any reason," he would: "(1) [r]eturn any company property or confidential information in my possession that is written, recorded, or other tangible form (together with all copies or duplicates thereof); (2) [n]ot retain or furnish [company property or confidential information] to any third party in any manner." (Ex. A at p. 11.)

48.     Bolden's signature on his 2022 Conduct Agreement served as an acknowledgement that "the provisions of this policy regarding the Covenant Not to Compete and on Confidentiality shall survive the expiration or termination of my employment with NFM Lending." (Ex. A at p. 15.)

49.     Bolden executed the "NFM Lending Employee Handbook and Resources Guide" ("Bolden's 2022 Employee Handbook") in Ohio March 2022 in consideration of his continued employment with NFM. A true and accurate copy of Bolden's 2022 Employee Handbook is attached as **Exhibit I**.

50.     Bolden's 2022 Employee Handbook specified that Bolden must "follow all applicable statutes, ordinances, rules, and regulations." (Ex. I at p. 15.)

51.     Bolden's 2022 Employee Handbook prohibited Bolden from engaging in conduct that constituted an actual or potential conflict of interest with NFM's interests. (Ex. I at p. 15.) Bolden's 2022 Employee Handbook indicated that "using proprietary or confidential Company information for personal gain to the Company's detriment" and "using Company assets . . . for personal labor or gain," were prohibited conflicts of interest. (Ex. I. at p. 17.)

52.     Bolden's 2022 Employee Handbook specified that:

> All the Company records, policies, procedures, and information relating to the Company, or its consumers, suppliers, and vendors are to be kept confidential and divulged only to individuals within the Company with both a need to receive and an authorization to receive the information.

12

> ***All records, policies, procedures, and files maintained by the
> Company are confidential and remain the property of the
> Company. . . .***
>
> Employees are prohibited from disclosing nonpublic personal
> information ("NPI") about the Company's customers or consumers
> as those terms are defined in Title V of the Gramm-Leach-Bliley
> Act ("GLBA") to which the employee may have access.
>
> Further, due to the privacy obligations under GLBA, all NPI,
> records, history, and discussions about the people we serve must be
> considered private and kept in confidence. . . . Employees may not
> disclose any information about a customer or consumer, including
> the fact that the customer or consumer is or is not served by our
> Company to anyone outside this Company unless so permitted by
> General Counsel or other authorized personnel.

(Ex. I at p. 22-23)(emphasis in original).

53.     Bolden's 2022 Employee Handbook required Bolden to return "all Company

property, including but not limited to keys, computer equipment and all electronic and paper

documents, handbooks, manuals, issued to the employee during employment" to NFM upon

cessation of employment. (Ex. I. at p. 47.)

54.     Through his signature on the 2022 Employee Handbook, Bolden acknowledged

he "underst[ood] and agree[d] that [he] will read and comply with the policies contained in this

Manual and any revisions, and [he is] bound by the provisions contained therein, and that my

continued employment is contingent on following those policies." (Ex. I at p. 81.)

55.     Bolden's 2022 Salesperson Agreement, 2022 Conduct Agreement, and 2022

Employee Handbook are collectively referred to as "Bolden's 2022 Agreements."

**C.      Bolden's Training and Access to Information.**

56.     In addition to general training on company policies and procedures, NFM

invested significant effort in training Mr. Bolden on finding potential new mortgage loan

customers, identifying and obtaining clients' personal information necessary to complete

mortgage loans, the mortgage loan process, and relevant governing regulations.

57.     Through his position, Mr. Bolden had access to NFM's pipeline of consumer and relator contacts for the entire Kettering, Ohio location to facilitate completion of mortgage loans.

58.     In order to effectuate his job duties, Mr. Bolden had access to NFM's corporate pricing engine for the purpose of knowing NFM's interest rates for all loan types as well as NFM's proprietary software solutions related to social media advertising.

59.     Mr. Bolden also had access to NFM's consumer relationship management system and NFM's loan origination software which contains non-public information regarding NFM's clients and consumers such as social security numbers, date of birth, tax returns and income information.

**D.     Bolden Violates his 2022 Agreements.**

60.     Bolden resigned from employment with NFM on February 2, 2023.

61.     NFM e-mailed Bolden a Post-Employment Obligation Reminder Letter ("Bolden's Post-Employment Obligation Reminder") about his non-competition, non-solicitation, and confidential information restrictive covenants on February 2, 2023. A true and accurate copy of the reminder letter is attached as **Exhibit J**.

62.     Shortly after sending Bolden the Post-Employment Obligation Reminder, NFM learned that Bolden violated his 2022 Agreements by taking NFM's confidential and trade secret information in the form of customer L.W.'s loan file and providing it UMortgage without the customer's knowledge for the purpose of diverting L.W.'s business to UMortgage. NFM will use customers' initials to protect their privacy.

63.     Due to Bolden's actions regarding L.W., NFM sent Bolden a Cease and Desist Letter ("Bolden's NFM Cease and Desist Letter") on February 3, 2023. A true and accurate copy

of Bolden's NFM Cease and Desist Letter is attached as **Exhibit K**. Customer information has

been redacted from that exhibit.

64.     Bolden's NFM Cease and Desist Letter demanded that he immediately cease

soliciting NFM's clients on UMortgage's behalf, return or destroy NFM's customer's

information, and provide proof of same by February 6, 2023. (Ex. K.)

65.     Bolden did not abide by the demands in his NFM Cease and Desist Letter.

66.     After NFM sent Bolden's NFM Cease and Desist Letter, NFM learned that

Bolden had engaged in additional conduct violating his 2022 Agreements by illicitly utilizing

NFM's computers to forward NFM's confidential and trade secret information in the form of

loan files and documents for K.L., K.D., M.S., L.S., J.D., R.T., C.W., and W.P. to his personal

email address for the purpose of diverting their business to UMortgage. Two of those customers

closed their loans with UMortgage.

67.     Due to Bolden's actions regarding K.L., K.D., M.S., L.S., J.D., R.T., C.W., and

W.P., NFM's counsel sent Bolden a second cease and desist letter ("Bolden's Taft Cease and

Desist Letter") on February 17, 2023. A true and accurate copy of Bolden's Taft Cease and

Desist Letter is attached as **Exhibit L**. Customer information has been redacted from that exhibit.

68.     Bolden's Taft Cease and Desist Letter demanded that he immediately cease

soliciting NFM's clients on UMortgage's behalf and  return or destroy NFM's customer's

information.

69.     Bolden did not abide by the demands in his Taft Cease and Desist Letter.

**II.     Levitt**

     **A.     2021 Agreements**

70.     NFM offered Levitt the job of loan originator at its Kettering, Ohio office in July

2021. Levitt was hired to support NFM's existing business relationships and consumers in Kettering, Ohio and establish new relationships on behalf of NFM in order to originate residential mortgage loans.

71.     Levitt's Offer Letter, a true and accurate copy of which is attached as **Exhibit M**, contained the following conditions:  (1) Levitt could only work for NFM during his employment with the company due to licensing regulations; (2) Levitt could not assist any person or organization in competing or preparing to compete with NFM; (3) Levitt could not hire any NFM employee to compete with NFM; and (4) Levitt must agree to the terms set forth in the 2021 Salesperson Employment Agreement.

72.     Levitt accepted NFM's Offer Letter in July 2021 by signing it in Ohio. (Ex. M.) At the time he started with NFM, he had little  mortgage loan industry experience.

73.     In consideration of Bolden's employment with NFM, Levitt executed the 2021 Salesperson Employment Agreement in August 2021 in Ohio. A true and accurate copy of Levitt's 2021 Salesperson Employment Agreement is attached hereto as **Exhibit N**.

74.     Levitt's 2021 Salesperson Employment Agreement prohibited Levitt from using NFM's confidential and trade secret information to solicit customers, employees, or anyone else that has or had a business relationship with NFM for one year following his termination from employment. (Ex. N.)

75.     Levitt's 2021 Salesperson Employment Agreement prohibited him from disclosing NFM's confidential, proprietary, and/or trade secret information. (Ex. N.)

76.     In consideration for employment at NFM, Levitt also executed a 2021 Code of Conduct ("Levitt's 2021 Code of Conduct") in Ohio in August 2021. A true and accurate copy of Levitt's 2021 Code of Conduct is attached as **Exhibit O**.

16

77.     Levitt's 2021 Code of Conduct contained a non-compete provision wherein Levitt agreed not to "directly or indirectly, either on [his] own behalf or on behalf of any other person, firm, corporation, company, or other entity service or attempt to service any consumer who were not self-generated by the employee or perform work for any recent, current, or prospective consumer that was generated or referred by NFM Lending," for a period of one-year after termination of his employment. (Exhibit O at p. 9.)

78.     Via Levitt's 2021 Code of Conduct, Levitt further relevantly agreed not to:

> Attempt or act in any manner to persuade any consumer or potential consumer that was generated or referred by NFM Lending to cease to do business or to reduce the amount of business which such customer or client has customarily done or contemplates doing with NFM Lending.
>
> Employ or attempt to employ any person who is then in the employ of or in a contracting relationship with NFM Lending or who was in the employ of or in a contracting relationship with NFM Lending within one-year prior to the termination of the employee's employment relationship with NFM Lending.
>
> . . .
>
> Solicit or divert (or attempt to solicit or divert) business of any consumer or potential consumer generated or referred by NFM Lending of the type usually provided by NFM Lending for any such consumer or potential consumer.

(Ex. O at p. 10.)

79.     Levitt executed the "NFM Lending Employee Handbook and Resources Guide" ("Levitt's 2021 Employee Handbook") in August 2021 in Ohio in consideration of his employment with NFM. A true and accurate copy of Levitt's 2021 Employee Handbook is attached as **Exhibit P.**

80.     Levitt's 2021 Employee Handbook specified that Levitt must "follow all applicable statutes, ordinances, rules, and regulations." (Ex. P at p. 13; *see also id*. at p. 16.)

17

81.   Levitt's 2021 Employee Handbook prohibited Levitt from engaging in conduct that constituted an actual or potential conflict of interest with NFM's interests. (Ex. P at p. 14.) Levitt's 2021 Employee Handbook indicated that "using proprietary or confidential Company information for personal gain to the Company's detriment" and "using Company assets . . . for personal labor or gain," were prohibited conflicts of interest. (Ex. P. at p. 15.)

82.   Levitt's 2021 Employee Handbook specified that:

> All NFM Lending records, policies, procedures, and information relating to NFM Lending or its consumers, suppliers, and vendors are to be kept confidential, and divulged only to individuals within the Company with both a need to receive and an authorization to receive the information.
>
> ***All records, policies, procedures, and files maintained by the Company are confidential and remain the property of the Company.***
>
> Employees are prohibited from disclosing nonpublic personal information ("NPI") about NFM Lending's customers or consumers as those terms are defined in Title V of the Gramm-Leach-Bliley Act ("GLBA") to which the employee may have access to.
>
> Further, due to the privacy obligations under GLBA, all NPI, records, history, and discussions about the people we serve must be considered private and kept in confidence. The very fact that an individual is served by NFM Lending can be disclosed only under specified conditions, which are described below, for reasons relating to law enforcement and fulfillment of our mission. Employees may not disclose any information about a customer or consumer, including the fact that the customer or consumer is or is not served by our Company to anyone outside this Company unless so permitted by General Counsel or other authorized personnel.
>
> NFM Lending is dedicated to ensuring that all consumer data is secure and safe. Employees must keep and handle personal consumer records and information in a manner that reasonably safeguards from destruction, theft, or other lose or harm from the consumer.

(Ex. P at p. 18) (emphasis in original.)

83.   Levitt's 2021 Employee Handbook required Levitt to return to NFM "all

18

Company property, including but not limited to keys, computer equipment and all electronic and paper documents, handbooks, manuals, issued to the employee during employment." (Ex. P at p. 42.)

84.     Through his signature on the 2021 Employee Handbook, Levitt acknowledged he "underst[ood] and agree[d] that [he] will read and comply with the policies contained in this Manual and any revisions, and I am bound by the provisions contained therein, and that my continued employment is contingent on following those policies." (Ex. P at p. 74.)

**B.     2022 Agreements**

85.     Levitt's 2022 Salesperson Employment Agreement contained the following confidential information and non-solicitation covenants:

> Employee acknowledges that the services rendered by them on behalf of NFM are of a special and unique character and that during employment Confidential Information will be accessed by the Employee related to Consumers/Clients and NFM employees.
>
> Due to the federal and state regulatory requirements related to the protection of privacy for Consumers/Clients of NFM, during the term of this Agreement, and for one (1) year following its termination, Employee agrees he/she shall not directly or indirectly either on their behalf or on behalf of another person, solicit or attempt to solicit to any Consumer/Client within NFM's loan origination software, consumer relations management software or any other NFM database that contains Confidential Information that the Employee or their staff would have had access to during the term of this Agreement. . . .
>
> Employee further acknowledges that a violation of this section shall result in irreparable harm to NFM and shall warrant the filing of all relief available under a court of law whether injunctive or monetary in nature.

(Ex. D at p. 2-3.)

86.     Levitt's 2022 Salesperson Employment Agreement contained the following confidentiality provision:

19

Employee agrees:

To hold the Confidential Information of NFM in strict confidence and to take reasonable precautions to protect such Confidential Information

To comply with all federal and state laws regarding privacy and confidentiality of consumer or consumer information including, but not limited to, the Gramm-Leach-Bliley Act and its implementing regulations.

To not copy such Confidential Information, or reverse engineer or disassemble any products, technology or tangible objects that utilize such Confidential Information. Employee shall promptly notify NFM upon discovery of any unauthorized use or disclosure of Confidential Information, or any other breach of this Agreement, and will cooperate with NFM in every reasonable way to help regain possession of such Confidential Information and prevent its future unauthorized use.

(Ex. D at p. 3.)

87.    Levitt's 2022 Salesperson Employment Agreement required Levitt to return all "manifestations of [NFM's] Confidential Information, and all documentation or media containing such Confidential Information, and all copies or extracts thereof" upon termination of employment at NFM. (Ex. D at p. 4.)

88.    Levitt agreed to comply with all applicable rules, policies, and procedures of NFM and to follow all relevant laws via the 2022 Salesperson Employment Agreement. (Ex. D at p. 8.)

89.    Levitt's signature on his 2022 Salesperson Employment Agreement served as an acknowledgement that "the provisions of this policy regarding the Covenant Not to Compete and on Confidentiality shall survive the expiration or termination of [his] employment with NFM Lending." (Ex. D at p. 12.)

90.    In consideration of Levitt's continued employment with NFM, Levitt signed the 2022 Conduct Agreement. Levitt's 2022 Conduct Agreement was substantially similar to his 2021 Conduct Agreement.

20

91.     Pursuant to the express terms of Levitt's 2022 Conduct Agreement, Levitt agreed to "keep and handle personal consumer records and information in a manner that reasonably safeguards from destruction, theft, or other lose or harm from the consumer" and to never "[p]rovide consumer data to a third party without consumer's express written authorization to release data." (Ex. C at p. 4)

92.     Pursuant to the express terms of Levitt's 2022 Conduct Agreement, Levitt agreed, among other things, to the following non-competition and non-solicitation covenants:

> Due to the special relationships that exist between its employees, and NFM Lending's customers and clients, employees, in the course of their executing duties, will acquire valuable confidential information, trade secrets, customer lists, proprietary information, financial information, and unique skills. Per company policy, employees will agree in consideration of their employment and the compensation, that while they are employed by NFM Lending and for a period of *one-year* after the termination of their employment relationship with NFM Lending, they shall not without the prior written consent of NFM Lending, directly or indirectly, either on their own behalf or on behalf of any other person, firm, corporation, company, or other entity service or attempt to service any consumer who were not self-generated by the employee or perform work for any recent, current, or prospective consumer that was generated or referred by NFM Lending.
>
> Employees agree while they are employed by NFM Lending and for a period of *one-year*, not to:
>
> 1.     Attempt or act in any manner to persuade any consumer or potential consumer that was generated or referred by NFM Lending to cease to do business or to reduce the amount of business which such customer or client has customarily done or contemplates doing with NFM Lending.
>
> 2.     Employ or attempt to employ any person who is then in the employ of or in a contracting relationship with NFM Lending or who was in the employ of or in a contracting relationship with NFM Lending within one-year prior to the termination of the employee's employment relationship with NFM Lending.
>
> . . .

> 4.   Solicit or divert (or attempt to solicit or divert) business of any consumer or potential consumer generated or referred by NFM Lending of the type usually provided by NFM Lending for any such consumer or potential consumer.

(Ex. C at p. 9.)

93.   Pursuant to the express terms of Levitt's 2022 Conduct Agreement, Levitt agreed, among other things, to the following confidentiality provisions:

> NFM Lending current and past employees are prohibited from disclosing to anyone outside of NFM Lending, using in anything other than NFM Lending business, or permitting any person (including past employees) to examine or make copies of any document that contains or are derived from any confidential information (including policies and procedures).

> Employees are required to hold the Confidential Information of NFM in strict confidence and to take reasonable precautions to protect such Confidential Information. . . . Confidential Information is any information, policy, procedure, memo, handbook, or materials concerning NFM Lending affairs whether business, technical or otherwise, which are not known to the public at large. It includes, but is not limited to, information and materials developed, collected, or used by NFM Lending personnel, information disclosed to NFM Lending by its clients or potential clients in the course of business; and information disclosed by third parties with which NFM Lending has or may have future concern in, but is not limited to, business strategies, financial data business plans, technology, contract provisions, client list, or personnel data. It may be contained on paper records, computer printouts, disks or other forms of documentation or media. However, it need not necessarily be reduced to a tangible form.

(Ex. C at 10.)

94.   Levitt's 2022 Conduct Agreement enables the Court to revise any portions of the 2022 Conduct Agreement's restrictive covenant if:

> any of the terms contained in the restrictive covenant or in its anti-piracy and confidentiality provisions shall be deemed to be unenforceable by reason of their breadth, duration, scope, or any other reason, then the parties hereto agree that a court of competent jurisdiction may reduce such breadth, duration, or geographical

> scope or appropriately modify the provisions hereof and enforce
> said covenant in its reduced form for all purposes in the manner
> contemplated in this policy.

(Ex. A at 10.)

95. Pursuant to his 2022 Conduct Agreement, Levitt agreed that "[u]pon termination or resignation of employment with NFM Lending for any reason," he would:  "(1) [r]eturn any company property or confidential information in my possession that is written, recorded, or other tangible form (together with all copies or duplicates thereof); (2) [n]ot retain or furnish [company property or confidential information] to any third party in any manner." (Ex. C at p. 11.)

96. Levitt's signature on his 2022 Conduct Agreement served as his acknowledgement that "the provisions of this policy regarding the Covenant Not to Compete and on Confidentiality shall survive the expiration or termination of [his] employment with NFM Lending." (Ex. C at p. 15.)

97. Levitt executed the "NFM Lending Employee Handbook and Resources Guide" ("Levitt's 2022 Employee Handbook") in February 2022 in Ohio in consideration of his continued employment with NFM. A true and accurate copy of Levitt's 2022 Employee Handbook is attached as **Exhibit Q**.

98. Levitt's 2022 Employee Handbook specified that Levitt must "follow all applicable statutes, ordinances, rules, and regulations." (Ex. Q at p. 15.)

99. Levitt's 2022 Employee Handbook prohibited Levitt from engaging in conduct that constituted an actual or potential conflict of interest with NFM's interests. (Ex. Q at p. 15.) Levitt's 2022 Employee Handbook indicated that "using proprietary or confidential Company information for personal gain to the Company's detriment" and "using Company assets . . . for

23

personal labor or gain," were prohibited conflicts of interest. (Ex. Q at p. 17.)

100.   Levitt's 2022 Employee Handbook specified that:

> All the Company records, policies, procedures, and information relating to the Company, or its consumers, suppliers, and vendors are to be kept confidential and divulged only to individuals within the Company with both a need to receive and an authorization to receive the information.
>
> *All records, policies, procedures, and files maintained by the Company are confidential and remain the property of the Company. . . .*
>
> Employees are prohibited from disclosing nonpublic personal information ("NPI") about the Company's customers or consumers as those terms are defined in Title V of the Gramm-Leach-Bliley Act ("GLBA") to which the employee may have access.
>
> Further, due to the privacy obligations under GLBA, all NPI, records, history, and discussions about the people we serve must be considered private and kept in confidence. . . . Employees may not disclose any information about a customer or consumer, including the fact that the customer or consumer is or is not served by our Company to anyone outside this Company unless so permitted by General Counsel or other authorized personnel.

(Ex. Q at p. 22-23) (emphasis in original.)

101.   Levitt's 2022 Employee Handbook required Levitt to return to NFM "all Company property, including but not limited to keys, computer equipment and all electronic and paper documents, handbooks, manuals, issued to the employee during employment." (Ex. Q at p. 47.)

102.   Through his signature on the 2022 Employee Handbook, Levitt acknowledged he "underst[ood] and agree[d] that [he] will read and comply with the policies contained in this Manual and any revisions, and I am bound by the provisions contained therein, and that my continued employment is contingent on following those policies." (Ex. Q at p. 81.)

103.   Levitt's 2022 Salesperson Employment Agreement, 2022 Conduct Agreement,

and 2022 Employee Handbook are collectively referred to as "Levitt's 2022 Agreements.

      **C.**    **Levitt's Training and Access to Information.**

104.    In addition to general training on company policies and procedures, NFM invested significant effort in training Mr. Levitt on finding potential new mortgage loan customers, identifying and obtaining clients' personal information necessary to complete mortgage loans, the mortgage loan process, and relevant governing regulations.

105.    Through his position, Mr. Levitt had access to the financial information of NFM's customers. He also had access to NFM's pipeline of consumer and relator contacts for the entire Kettering, Ohio location to facilitate completion of mortgage loans.

106.    In order to effectuate his job duties, Mr. Levitt had access to NFM's corporate pricing engine for the purpose of knowing NFM's interest rates for all loan types as well as to NFM's proprietary software solutions related to social media advertising.

107.    Mr. Bolden also had access to NFM's consumer relationship management system and NFM's loan origination software which contains non-public information regarding NFM clients and consumers such as social security numbers, date of birth, tax returns and income information.

      **D.**    **Levitt Violates his 2022 Agreements.**

108.    Levitt abandoned his employment with NFM on February 2, 2023.

109.    NFM e-mailed Levitt a Post-Employment Obligation Reminder Letter ("Levitt's Post-Employment Obligation Reminder") about his non-competition, non-solicitation, and confidential information restrictive covenants on February 2, 2023. A true and accurate copy of the reminder letter is attached as **Exhibit R**.

110.    Shortly after sending Levitt the Post-Employment Obligation Reminder, NFM learned that Levitt violated his 2022 Agreements by the following non-exhaustive actions: (i) soliciting NFM's customers on UMortgage's behalf; (ii) soliciting Bolden, Misti Thorpe, and Alecia Slanina, three of NFM's employees, to work at UMortgage, and (iii) using NFM's office address as his new business address. As a result, NFM sent Levitt a Cease and Desist Letter ("Levitt's NFM Cease and Desist Letter") on February 3, 2023. A true and accurate copy of Levitt's NFM Cease and Desist Letter is attached as **Exhibit S**. Customer information has been redacted from that exhibit.

111.    Levitt's NFM Cease and Desist Letter demanded that he immediately cease his solicitation efforts and provide proof of same by February 6, 2023. (Ex. S.)

112.    Levitt did not abide by the demands in his NFM Cease and Desist Letter.

113.    After NFM sent Levitt's NFM Cease and Desist Letter, NFM learned that Levitt had engaged in the following additional, non-exhaustive conduct violating his 2022 Agreements: (i) illicitly utilizing NFM's computers to forward NFM's confidential and trade secret information in the form of loan files and documents for B.W., M.H., A.H., K.R., D.M., and B.M, six customers of NFM, to his personal email address for the purpose of diverting their business to UMortgage; (ii) impermissibly soliciting NFM employees Kyle McCort and Justus Sharpe to work for UMortgage; and (iii) improperly using NFM's computers to seek and obtain with UMortgage as early as December 2022, while he was still employed by NFM.

114.    Due to Levitt's actions set forth in the immediately preceding paragraph,  NFM's counsel sent Levitt a second cease and desist letter ("Levitt's Taft Cease and Desist Letter") on February 17, 2023. A true and accurate copy of Levitt's Taft Cease and Desist Letter is attached as **Exhibit T**. Customer information has been redacted from that exhibit.

115.    Levitt's Taft Cease and Desist Letter demanded that he immediately cease soliciting NFM's clients and employees on UMortgage's behalf and return or destroy NFM's clients and customers' information.

116.    Levitt did not abide by the demands in his Taft Cease and Desist Letter.

117.    After Levitt's Taft Cease and Desist Letter, NFM learned that Levitt additionally took NFM's confidential and trade secret information in the form of the loan file and loan information of D.R., a NFM customer, for the purpose of diverting her business to UMortgage.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Defend Trade Secrets Act – 18 U.S.C. § 1836)**

118.    NFM incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

119.    Defendants violated 18 U.S.C. § 1836  by misappropriating NFM's trade secrets and using those trade secrets to unfairly compete with and harm NFM in the marketplace.

120.    NFM's trade secrets at issue include, but are not limited to:

    i.    Information about clients and customers and prospective clients and customers; and

    ii.    Information regarding NFM's business methods, practices and procedures, and research techniques.

121.    NFM uses the above-detailed trade secrets in interstate commerce, namely in the provision of its products and services directed across the United States.

122.    The above-detailed trade secrets are not generally known or readily ascertainable by others, and have substantial value to competitors in the same industry.

123.    NFM developed its trade secrets at substantial expense and with the input of significant time and effort. Defendants have enjoyed, and continue to enjoy, a significant

competitive advantage in the marketplace as a result of their misappropriation of NFM's trade secrets.

124.    NFM took reasonable steps to ensure the confidentiality of its trade secrets and protect against their disclosure. By way of example, and not limitation, NFM requires that its employees execute agreements and/or acknowledge confidentiality obligations prohibiting disclosure of NFM's confidential information and trade secrets. In this case, Defendants willingly executed their respective 2022 Agreements requiring the protection of all confidential information and non-disclosure of that information.

125.    NFM also limits dissemination of trade secret information within NFM, and spends considerable resources on internal information technology security programs, features and systems to safeguard against employees improperly accessing, exporting and retaining its trade secrets.

126.    Defendants gained access to NFM's trade secrets during the course of their employment with NFM. They were obligated to maintain the secrecy of and not disclose to others NFM's confidential business information and trade secrets.

127.    Defendants were aware of their confidentiality obligations at the time they obtained NFM's trade secrets and forwarded them to their personal e-mail addresses, and they knew that they were obtaining and forwarding those trade secrets illegally.

128.    Defendants' use of NFM's trade secrets directly and proximately led to their competing unfairly with NFM, on behalf of UMortgage, and, upon information and belief, Defendants continue to use the trade secrets they misappropriated from NFM to seek out and convert NFM's customers.

129.    Defendants' misappropriation of NFM's trade secrets was willful and malicious.

28

Defendants were informed of and acknowledged the confidentiality of NFM's materials and yet they nevertheless misappropriated them anyway.

130.    As a direct and proximate result of Defendants' misappropriation of NFM's trade secrets, NFM has been and will continue to be, irreparably harmed, and has suffered monetary damages in an amount to be determined at trial.

131.    Pursuant to 18 U.S.C. § 1836(b)(3)(B), NFM is entitled to damages for actual losses and unjust enrichment caused by Defendants' misappropriation of its trade secrets.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract - 2022 Agreements – Ohio Law)**

132.    NFM incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

133.    Bolden's 2022 Agreements and Levitt's 2022 Agreements will be collectively referred to as the "2022 Agreements."

134.    The 2022 Agreements are valid and legally enforceable contracts that NFM and Defendants entered into freely and without duress.

135.    The 2022 Agreements are reasonable in scope, and are reasonably tailored to protect NFM's legitimate business interests.

136.    Bolden has willfully breached his 2022 Agreements by, among other things:

    i.    Wrongfully and unlawfully using his work computer and to send copies of NFM's customers' private information to his personal e-mail address;

    ii.    Working for UMortgage, NFM's direct competitor, in the same geographical location he worked for NFM and where NFM continues to operate;

    iii.    Upon information and belief directly or indirectly soliciting NFM's

29

customers, and clients, to end their business relationship with NFM; and

iv.     Upon information and belief directly or indirectly soliciting NFM's customers, clients, and employees to begin their business relationship with UMortgage;

prior to the expiration of his one-year non-competition and non-solicitation obligations under his 2022 Agreements. *See* Exhibits A, B, and I.

137.    Levitt has willfully breached his 2022 Agreements by, among other things:

i.      Wrongfully and unlawfully using his NFM work computer and to send copies of NFM's customers' private information to his personal e-mail address;

ii.     Upon information and belief directly or indirectly soliciting NFM's customers,  clients, and employees to end their business relationship with NFM;

iii.    Upon information and belief directly or indirectly soliciting NFM's customers, clients, and employees to begin their business relationship with UMortgage;

iv.     Wrongfully and unlawfully using his NFM work computer to seek and obtain employment with UMortgage, a direct competitor of NFM that operates in the same areas that NFM currently services, which would be a clear and knowing violation of Levitt's duties to NFM and

v.      Working for UMortgage, NFM's direct competitor, in the same geographical location he worked for NFM and where NFM continues to operate;

prior to the expiration of his one-year non-competition and non-solicitation obligations under his 2022 Agreements. *See* Exhibits C, D, and Q.

138.    Defendants further willfully breached their respective 2022 Agreements by wrongfully taking and, upon information and belief, disclosing NFM's confidential, proprietary, and/or trade secret information.

139.    As a direct and proximate result of Defendants' unlawful conduct, NFM has and will continue to suffer immediate, substantial, and irreparable harm, including, but not limited to:

  i.    The loss of confidence and trust of NFM's customers, clients, and employees as well as the lowering of goodwill and loss of business reputation for NFM in the community as a whole;

  ii.   Present economic loss, which is uncertain at this time; and

  iii.  Future economic loss, which is presently incalculable.

140.    Monetary damages alone will not be sufficient to remedy all of the harm caused to NFM by Defendants' breaches of the Agreement.

141.    A temporary restraining order, preliminary injunction, and permanent injunction are necessary to enjoin Defendants from further violations of the provisions of the 2022 Agreements and to prevent irreparable harm to NFM.

## THIRD CLAIM FOR RELIEF
### (Faithless Servant Doctrine – Against Levitt – Ohio Law)

142.    NFM incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

143.    Levitt, while employed by NFM, used NFM's resources to seek out and obtain employment with UMortgage, a direct competitor of NFM that operates in the same geographical areas that NFM currently services, which was a clear and knowing violation of Levitt's duties to

NFM.

144.    Upon information and belief, those actions culminated in an offer of employment with UMortgage which predicated Levitt's abandonment of his employment with NFM on February 2, 2023.

145.    Further, Levitt spent his final days at NFM scouring its network and sending himself NFM's confidential, proprietary, and trade secret information regarding NFM's customers.

146.    Levitt's conduct was dishonest and disloyal in that he knowingly and willfully acted to wrongfully go work for a business that directly competes with NFM, in geographical areas that NFM currently services, prior to the expiration of his non-competition and non-solicitation obligations.

147.    That dishonest and disloyal conduct permeated the final months of Levitt's employment with NFM such that he must forgo and be disgorged of all compensation that he received for the duration of that "faithless" period.

**FOURTH CLAIM FOR RELIEF**
**(Replevin – Ohio Law)**

148.    NFM incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

149.    NFM develops and is the owner of confidential, proprietary, and/or trade secret information including, but not limited to:

 i.    Information about clients and customers and prospective clients and customers; and

 ii.    Information regarding NFM's business methods, practices and procedures, and research techniques.

32

150.     NFM has the right to immediate possession of the above referenced information because NFM is the rightful owner of that information.

151.     Upon information and belief, Defendants are wrongfully retaining some or all of the above referenced information and refusing to return it to NFM.

152.     Accordingly, NFM is entitled to the immediate return of any of the above referenced information that is in Defendants' possession, custody, or control as well as any monetary damages caused by Defendants' wrongful withholding of the same.

153.     As a direct and proximate result of Defendants' conversion, NFM has suffered damages, including the loss of the use of the converted information and a loss of business opportunity as a result of that loss of use.

## FIFTH CLAIM FOR RELIEF
### (Conversion – Ohio Law)

154.     NFM incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

155.     NFM develops and is the owner of confidential, proprietary, and/or trade secret information including, but not limited to:

    i.     Information about clients and customers and prospective clients and customers; and

    ii.     Information regarding NFM's business methods, practices and procedures, and research techniques.

156.     NFM has the right to immediate possession of the above referenced information because NFM is the rightful owner of that information.

157.     Upon information and belief, Defendants wrongfully deprived NFM of possession of the above referenced information by taking possession of it, using it, and refusing to return it

33

to NFM.

158.     As a direct and proximate result of Defendants' conversion, NFM has suffered

damages, including the loss of the use of the converted information and a loss of business

opportunity as a result of that loss of use.

**SIXTH CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets - Ohio Law)**

159.     NFM incorporates by reference all of the previous paragraphs set forth in this

Verified Complaint as if fully rewritten herein.

160.     NFM develops and maintains highly confidential and proprietary information,

including, but not limited to:

      i.      Information about clients and customers and prospective clients and
            customers;

      ii.     Information regarding NFM's business methods, practices and procedures,
            and research techniques.

161.     NFM's confidential and proprietary information derives independent economic

value, actual and potential, from not being generally known to, and not being readily

ascertainable by proper means by, other persons who can obtain economic value from its

disclosure or use, including NFM's competitors; and is the subject of efforts that are reasonable

under the circumstances to maintain its secrecy.

162.     NFM's confidential and proprietary information is protected, in whole or in part,

as a trade secret within the meaning of Ohio Rev. Code § 1333.61(D).

163.     During their employment by NFM, Defendants had extensive access to and

knowledge of the entirety of NFM's confidential and proprietary information. Defendants also

used NFM's confidential and proprietary information in the performance of their job

34

responsibilities at NFM.

164.    Defendants have misappropriated or threatened to misappropriate NFM's trade

secrets for use against NFM and for the benefit of Defendants within the meaning of Ohio Rev.

Code § 1333.61(B)(2).

165.    As a direct and proximate result of Defendants' actual or threatened

misappropriation of NFM's trade secrets, NFM has and will continue to suffer the above

referenced immediate, substantial, and irreparable harm.

166.    NFM has no adequate remedy at law.

167.    Monetary damages alone will not be sufficient to remedy all of the harm caused to

NFM by Defendants' actual or threatened misappropriation of trade secrets.

168.    A temporary restraining order, preliminary injunction, and permanent injunction

are necessary to prevent Defendants' further misappropriation of trade secrets and to prevent

irreparable harm to NFM.

## SEVENTH CLAIM FOR RELIEF
### (Unfair Competition - Ohio law)

169.    NFM incorporates by reference all of the previous paragraphs set forth in the

Verified Complaint as if fully rewritten herein.

170.    The foregoing conduct of Defendants, as described herein, constitutes an unfair

method of competition under Ohio law.

171.    As a consequence of Defendants' conduct, NFM has, and will continue, to suffer

commercial losses and damage.

## EIGHTH CLAIM FOR RELIEF
### (Tortious Interference with a Business Relationship - Ohio law)

172.    NFM incorporates by reference all of the previous paragraphs set forth in this

Verified Complaint as if fully rewritten herein.

173.    Through the use of NFM's confidential, proprietary, and trade secret information,

Defendants are, upon information and belief, attempting to induce NFM customers to cease

doing business with NFM in favor of UMortgage.

174.    Defendants' conduct is improper and constitutes tortious interference with NFM's

business relationships.

175.    As a direct and proximate result of Defendants' conduct, NFM has suffered, and

will continue to suffer, damages in the form of lost business and lost commercial opportunities.

## NINTH CLAIM FOR RELIEF
### (Tortious Interference with Contracts under Ohio law)

176.    NFM incorporates by reference all of the previous paragraphs set forth in this

Verified Complaint as if fully rewritten herein.

177.    NFM had completed pre-qualifications, pre-approvals and loan applications with

B.M., A.H., M.H., K.J., S.L., H.J., L.W., L.S., M.S., J.D., K.R., and C.B.  several customers that

Defendants worked with.

178.    Defendants were aware of those loan files.

179.    Defendants intentionally and without justification secured breaches of those

contracts by having M.H. and K.R. close their mortgages at UMortgage instead of at NFM.

180.    Defendants' actions caused NFM damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
### (Unjust Enrichment - Ohio law)

181.    NFM incorporates by reference all of the previous paragraphs set forth in this

Verified Complaint as if fully rewritten herein.

182.    NFM conferred benefits upon Defendants by providing Defendants with access to

NFM's trade secret and confidential information.

183.     Defendants were aware of those benefits.

184.     Retention of those benefits by the Defendants would be unjust under the circumstances.

**WHEREFORE**, Plaintiff NFM, Inc., respectfully requests that this Court issue a temporary restraining order, preliminary injunction, and permanent injunction, against Defendants Justin Bolden and Stephen Levitt, and all others acting in concert, on its First, Second, and Sixth Claims for Relief as follows:

A.     Enforcing Defendants' obligations under their 2022 Agreements with NFM;

B.     Restraining and enjoining Defendants, and those acting in concert with them, from working for any competing business located within a twenty-five mile vicinity of Kettering, Ohio, for the balance of the period dictated by the Agreement;

C.     Restraining and enjoining Defendants, and those acting in concert with them from engaging in any further acts in violation of the 2022 Agreements, including soliciting customers, clients, or employees or otherwise diverting business from NFM for the balance of the period dictated by the Agreement;

D.     Restraining and enjoining Defendants, and those acting in concert with them, from directly or indirectly accessing, disclosing, communicating, or otherwise using NFM's confidential, proprietary, and/or trade secret information—including but not limited to its customer and prospective customer databases and information—to any other person or entity;

E.     Directing Defendants, and those acting in concert with them, to

immediately return to NFM any confidential or proprietary information of NFM—including but not limited to its customer and prospective customer databases and information—that they have in their possession, custody, or control;

F.      Prohibiting Defendants, and those acting in concert with them, from destroying or dissipating any documents or electronically stored information including information on any computers, computer hard drives, and computer discs or drives, owned or accessed by Defendants at any time, and any video recordings, any of which contain any information related to NFM, any of NFM's past, present, or prospective customers, any of NFM's current or former employees, agents, or independent contractors, Defendants' employment by or resignation from NFM, Defendants' employment with UMortgage, and/or any information related to NFM or UMortgage whatsoever; and

G.      Granting such other and further relief as the Court deems appropriate.

**FURTHERMORE**, Plaintiff NFM, LLC respectfully requests that this Court issue judgment in its favor and against Defendants Justin Bolden and Stephen Levitt as follows:

A.      A Judgment in NFM's favor on its First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief;

B.      Award NFM compensatory and punitive damages, costs, expenses, and attorney fees in an amount to be determined at trial, together with pre-judgment and post-judgment interest; and

C.      Award punitive and/or exemplary damages, up to and including treble damages pursuant to O.R.C. § 1333.63(B);

       D.       Award NFM such other and further relief as this Court finds just and proper.

                             Respectfully submitted,

                             */s/ Teresa N. Taylor*
                             Teresa N. Taylor (1206080008)
                             TAFT STETTINIUS & HOLLISTER LLP
                             200 Massachusetts Ave. NW Suite 500
                             Washington, DC  20001-5875
                             Telephone: (202) 664-1537
                             Facsimile: (202) 664-1586
                             Email:  TNTaylor@taftlaw.com

                             Attorney for Plaintiff NFM, Inc.

76723015v3

## <u>VERIFICATION OF COMPLAINT</u>

STATE OF _____        )

                                                        ) ss:

COUNTY OF _____)

        I, _____, having first been duly sworn, depose and state that I have read the foregoing Verified Complaint and verify that the facts stated therein as they relate to this dispute are true and accurate, based on my knowledge, information, and belief.

                                        NFM, Inc.

                                        By:_____

                                             Name
                                             Title

SWORN TO BEFORE ME and subscribed in my presence this _____ day of March, 2023.

                                        _____

                                        NOTARY PUBLIC